PORTER v. RHOADES.

(Supreme Court, Appellate Division, Third Department. March 7, 1900.)

CLAIMS AGAINST DECEDENT—EVIDENCE.

A note sued on was executed by decedent to his wife in 1872, payable in one year. Plaintiff alleged that it was given to him by the wife before her death, in 1881. Though decedent was able to pay, no demand was made, and the only payments shown were four, of one dollar each, made with intervening spaces of six years, and none of the indorsements therefor were by decedent, while the last two seemed, from appearances, to have been made by the same person at the same time. During the time plaintiff claimed to have held the note he borrowed several small sums from decedent, giving his note therefor, with interest, instead of crediting them as payments on the note executed by decedent. *Held* insufficient to establish the note as a claim against decedent's estate.

Merwin, J., dissenting.

Appeal from judgment on report of referee.

Action by William L. Porter against Uri Rhoades, as executor of Harvey Tinkham, deceased. From a judgment for plaintiff, defendant appeals. Reversed.

The reference was of a claim against the estate of Harvey Tinkham. This claim arose upon a note executed on the 15th of September, 1872, by Harvey Tinkham, and delivered to his wife, Sarah Tinkham, for the sum of $694, payable one year from date. Plaintiff claims this note by gift from Sarah Tinkham before her death. Four payments are claimed by the plaintiff to have been made thereon, each a payment of one dollar,—one upon the 5th day of November, 1878; another upon the 20th day of October, 1884; another upon the 15th day of October, 1890; another upon the 24th of September, 1896. The referee has found the plaintiff to be the owner of the note, and that these payments were made in such a manner as to prevent the running of the statute of limitations, and has ordered judgment for the full amount of the note, together with interest from the 15th day of September, 1873, less some offsets, about which there is no dispute. Further facts appear in the opinion.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

H. B. Coman, for appellant.
Charles A. Fuller, for respondent.

SMITH, J. In Kearney v. McKeon, 85 N. Y. 139, Judge Finch, in writing for a unanimous court, says:

"Claims withheld during the life of an alleged debtor, and sought to be enforced when death has silenced his knowledge and explanation, are always to be carefully scrutinized and admitted only upon very satisfactory proof; and when it further appears that a subsequent dealing existed, in which the pretended creditor was to some extent a debtor, never once presenting his claim in reduction of his debt, the weight of suspicion becomes very great, and justifies a demand for distinct and definite proof, and the clearest indication of honesty and fairness."

In Van Slooten v. Wheeler, 140 N. Y. 633, 35 N. E. 587, Earl, J., in writing for the court, says:

"Public policy requires that claims against the estates of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids."

From a careful scrutiny of the evidence, as it appears in the record, and of the original exhibits which have been presented to us, it seems

clear that the plaintiff has failed to establish his cause of action by such a preponderance of evidence as the law, from public policy in such a case, would exact. The making of the note and its delivery by Harvey Tinkham to his wife are not questioned. That it was by her delivered to this plaintiff, and that the payments were made as claimed, are facts most seriously questioned. Sarah Tinkham, the wife of Harvey Tinkham, died upon the 27th day of March, 1881. Harvey Tinkham died in 1897. It is claimed that while in ordinarily good health, with no reason to anticipate death, Sarah Tinkham, a comparatively young woman, without consideration gave to this plaintiff this note, which constituted a material part of her estate. Harvey Tinkham was a man of means, and yet for 16 years after the death of Sarah Tinkham, while this plaintiff claims to have been the owner of this note, with an accrued right to collect the moneys due thereupon, no demand was ever made for its payment. The first indorsement on the note, singularly, was made by plaintiff's wife while the note still belonged to Sarah Tinkham. She swears that, while she happened to be visiting at the house, the payment of one dollar was made upon the note, and she was asked to make the indorsement. Harvey Tinkham and his wife were apparently more capable of making a business indorsement than was she. Why this private negotiation between Harvey Tinkham and his wife should have been brought to light before the plaintiff and his wife at that time is not explained. Three times thereafter, each time just within six years from the previous time, as plaintiff's wife swears, Tinkham made a payment of one dollar upon the note for the purpose of keeping alive the obligation. While apparently a man of business, not one of these indorsements was made by Harvey Tinkham himself. The indorsements upon the note have not the appearance of indorsements made six years apart, at different places, with different pens and different ink. There was much expert evidence given upon the trial which perhaps tended to confuse rather than enlighten the referee. From that evidence, however, and from the note itself, one fact seems to us proven,—the last two indorsements were made at the same time, with the same pen, and with the same ink. The similarity of those two indorsements, in the style of writing and in the color of the ink, seems to preclude a possibility of an intervening space of six years between their making. Still more significant, and in fact controlling in this case, are the acts of the plaintiff himself. Upon April 13, 1892, for a loan of $40, the plaintiff gave to Harvey Tinkham his promissory note, payable within 30 days from date, with use. Upon September 10, 1892, for a loan of $50, the plaintiff gave to Harvey Tinkham another note, payable on demand, with use. Upon April 17, 1895, for the loan of $40, the plaintiff gave to Harvey Tinkham another note, payable within 30 days, with use. And what is the explanation of these acts, so inconsistent with the plaintiff's claim that Tinkham was at that time owing him such a large sum upon a note which plaintiff held, and which liability Tinkham recognized? Tinkham is said to have demanded a note with interest because the note against him was without interest. Granting, for the argument, that he might think his note bore no interest, though long past due, if such

fact might account for his demand it hardly accounts for the plaintiff's acts in giving the notes without protest. The more surely would the plaintiff have demanded the money as a payment upon the note he held, rather than as a loan for which he should give his promissory note with interest.

It is true that the evidence of the plaintiff's wife is explicit, and that as to the last payment she is corroborated by the witness Cross. The plaintiff's wife, however, is largely interested in the result of this action. The relations of the witness Cross to the plaintiff are not such as to make him a wholly disinterested witness. For 16 years while Harvey Tinkham was alive, this plaintiff could at any time have collected this note. His failure so to do, or even to make demand of any part thereof, together with the fact of his borrowing from Harvey Tinkham these several sums, for which he gave his notes, so far discredit the evidence offered in behalf of the plaintiff as to leave the conclusion of the learned referee without substantial support. The judgment should therefore be set aside, the referee discharged, and a new trial granted, with costs to the appellant to abide the event of the action.

Judgment reversed, referee discharged, and a new trial granted, with costs to the appellant to abide the event of the action. All concur, except MERWIN, J., who dissents.