### SCULLY v. SCULLY.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

1. EVIDENCE (§ 236*)—DECEASED PERSONS—CONVERSATIONS—ADMISSIONS.

In an action for conversion of money deposited in a bank, where the question was as to the ownership as between a father and son, who were both dead, evidence of a conversation between the two men relative to such deposit was admissible as declarations or admissions which were binding on their representatives.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 876–882; Dec. Dig. § 236.*]

2. EVIDENCE (§ 121*)—RES GESTÆ—CONVERSATIONS OF DECEASED PERSONS.

In an action for conversion of money deposited in a bank, where the question was as to the ownership as between a father and son, who were both dead, evidence of a conversation between the two men relative to such deposit was admissible as part of the res gestæ, establishing the relations of the parties in reference to the deposit.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. § 121.*]

3. WITNESSES (§ 139*)—CONVERSATIONS WITH DECEASED PERSONS—INTEREST—ADMINISTRATRIX.

Testimony by an administratrix, who was a beneficiary under the will of her husband, in an action by her as such, of a conversation with her father-in-law relative to the ownership of a deposit in a bank as between her husband and the father, where the party alleged to have converted the property claimed that she acted under the direction of the father, was inadmissible under Code Civ. Proc. § 829, relating to communications between persons interested and deceased persons.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 582–597; Dec. Dig. § 139.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Albany County.

Action by Sarah Scully, administratrix of Thomas J. Scully, deceased, against Margaret P. McGrath, formerly Scully. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

John J. McCall, of Albany (Nicholas J. Barry, of Albany, of counsel), for appellant.

Countryman, Nellis & Du Bois, of Albany (M. H. Nellis, of Albany, of counsel), for respondent.

SMITH, P. J. Plaintiff has recovered a judgment for the conversion of certain moneys by the defendant, which moneys have been held to have been the moneys of plaintiff's husband, whose estate she is now administering. Thomas Scully, plaintiff's husband, died on the 3d day of October, 1900. In 1893 there was opened an account in his name in the Mechanics' & Farmers' Savings Bank. From that account some moneys were drawn and some deposited therein, until at the time of his death there was in said bank to the credit of Thomas Scully the sum of $815.75. John Scully was the father of Thomas Scully. As far as appears from the evidence, at all times since the opening of the account the bank book was in the possession of John Scully. Shortly prior to October 13, 1900, Sarah Scully, this plaintiff, was appointed administratrix of her husband's estate. Upon October 13th she went to this bank in company with her father-in-law, John Scully, and this defendant. Thereupon the moneys were withdrawn by her and given to John Scully, who in their presence deposited the moneys, with the exception of about $50 which he retained in the National Savings Bank in the city of Albany, to the credit of Sarah and Margaret Scully, now Margaret McGrath, this defendant. Upon January 3, 1901, these moneys were withdrawn from the bank by Margaret Scully under the direction of her father, John Scully, and deposited in the Albany Savings Bank to the credit of Delia Scully, a sister of Margaret, and Margaret. Shortly thereafter the deposit was again changed in the same bank to the credit of Bridget Scully, the wife of John Scully, and Margaret. The moneys were afterwards withdrawn upon the 19th day of September, 1904. The claim of the plaintiff is that these moneys were at all times the moneys of her intestate, and that the act of Margaret Scully in withdrawing them from the National Savings Bank and depositing them to the name of herself and Delia Scully, her sister, was an unlawful interference with said funds, and therefore constituted a conversion thereof.

The plaintiff's right must mainly depend upon the force of the presumption that the moneys deposited in the name of Thomas Scully were his moneys. The force of this presumption is largely overcome by the fact that at all times the bank book was held in the possession of John Scully, the father. These moneys could not be withdrawn without the presentation of this bank book. All of this time Thomas Scully and Sarah Scully had an individual account in another savings

bank in Albany, which was in no way connected with this account, and of which they held the bank book. The withdrawal of these deposits in January, 1901, by Margaret Scully became known to Sarah Scully, as she swears, within a year and a half after they were withdrawn. John Scully lived thereafter until February, 1905. His wife, Bridget Scully, lived until September, 1905. The fact that Sarah Scully waited to insist upon this demand until after the death both of John Scully and Bridget Scully, his wife, goes far to corroborate the claim of the defendant that the moneys were the moneys of John Scully. It is not claimed that Margaret Scully ever had any personal benefit from this deposit, and, in fact, the evidence that she did not have any personal benefit was excluded as immaterial, and probably properly excluded. Whether the deposits in the Mechanics' & Farmers' Savings Bank were in fact the property of John Scully or Thomas Scully was a question of fact. Margaret Scully swears that at the time the deposit was withdrawn Sarah Scully handed the moneys over to John Scully, and said, "Here is your money." This is denied by Sarah Scully. Delia Scully further swears that at one time when her father wanted to withdraw some money from this bank he sent for Thomas Scully, and that Thomas Scully asked why he did not withdraw it all. Under these facts, it may well be doubted whether the verdict was a just verdict, or whether it was not against the weight of evidence.

[1-3] The question of the weight of evidence need not be here considered, however, in view of certain rulings by the trial court which seem to me to be fatal to this recovery. While Thomas Scully was living, Delia Scully swears that he and her father, John Scully, had a conversation in reference to this deposit. The defendant offered to prove that conversation, to which an objection was made, which objection was sustained by the trial court. This evidence should have been admitted. It was competent either as a declaration or admission of Thomas Scully, binding upon his representative, or as part of the res gestæ establishing the relations of the parties in reference to the deposit and its ownership. That conversation may well have cleared up any doubt that might otherwise exist as to why this deposit was in the name of Thomas Scully, while his father, John Scully, at all times held the pass book. The trial court further allowed Sarah Scully to swear to certain conversations with John Scully, which were material as bearing upon the ownership of the property. This testimony was objected to as incompetent under section 829 of the Code of Civil Procedure. There can be no doubt that Sarah Scully was personally interested in the result of the action. She was administratrix of the estate, and was also one of the beneficiaries thereof. Margaret Scully claims simply to have acted under John Scully, under his authority or direction. These two facts would seem to bring this testimony directly within the prohibition of the section. For these errors, the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur; HOUGHTON, J., in opinion and BETTS, J., in result.

HOUGHTON, J. (concurring). I agree in a reversal of this judgment only upon the ground that the court erred in refusing to receive the testimony of Delia Ryan respecting the conversation between her father, John, and Thomas J. Scully, deceased, regarding the money in dispute; and I concur in such holding solely upon the ground that proper objection was not made.

The only objection interposed was that the testimony was incompetent, hearsay, and self-serving. There was no objection that the witness herself was incompetent to testify as against this plaintiff because of the prohibition of section 829 of the Code, nor were facts sufficiently developed to show that she was interested in the estate of John Scully, deceased. The money which it is alleged the defendant converted was deposited in the name of Thomas J. Scully at the time of his death. The defendant attempted to justify her intermeddling with and conversion of such money, not because she herself was the owner, but on the ground that it belonged, not to Thomas J., the deceased, in whose name it was deposited, but to her father, John, and that whatever she did with it was done in pursuance of his direction. The record shows that John Scully was dead, but it does not appear that his daughter Delia would gain anything by adding the $760 in dispute to his estate if he died still owning it. If he died such owner leaving a will of which she was residuary legatee, or if the fund was specifically bequeathed to her, or if he died intestate and she was one of his next of kin, manifestly she would gain through the success of the defendant in retaining the money for his estate, and hence she would be incompetent to testify against the plaintiff as administratrix to personal transactions had with her testator or intestate, for she would be testifying in her own behalf and for her own benefit. Matter of Meehan, 59 App. Div. 156, 69 N. Y. Supp. 9; Holcomb v. Holcomb, 95 N. Y. 317, 325; Brigham v. Gott, 3 N. Y. Supp. 518.[1]

But even if it appeared that she was interested in one of these ways, and would gain or lose by the result of the present action, no objection was made as to her competency as a witness to testify. The evidence sought from her was material and proper, notwithstanding the fact that she may have been incompetent to give it. An objection to be available under section 829 must go to the competency of the witness, and a general objection as to the competency of the evidence itself is not sufficient to invoke its protection. Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163; Stevens v. Brennan, 79 N. Y. 254.

I do not agree, however, that it was error for the court to permit the plaintiff, Sarah Scully, the administratrix of Thomas J. Scully, deceased, to testify in her own behalf to conversations which she had with John Scully, deceased. She did not claim title to the fund in controversy through John Scully by assignment or in any manner. She claimed title to it as administratrix of her husband, Thomas J., because the money was on deposit in his name when he died, and thus prima facie belonged to him, notwithstanding the fact that she had

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 51 Hun, 636.

139 N.Y.S.—40

been induced by John to withdraw it as administratrix, and redeposit it in the name of herself and the defendant. The defendant is not the administratrix or executrix of ·John Scully, deceased, but a mere individual who assumed to meddle with the deposit, and who attempts to justify her acts, not because John gave the money to Thomas J., but because it always belonged to John, and was merely being held by Thomas for his benefit. As administratrix the plaintiff made prima facie title to the money by simply showing that it was on deposit in the name of her intestate when he died, and that title could be defeated only by the fact that she turned it over to John in settlement of a bona fide claim made by him against the estate of her intestate; and upon no theory of the action, therefore, can it be said that she claimed title thereto through John Scully a deceased person.

Although Sarah Scully was entitled to share in the estate of her deceased husband, and was therefore interested in the recovery of the deposit which stood in his name, still I think she was competent to testify in her own behalf as administratrix to personal transactions had with John Scully, deceased, tending to show that the claim of the defendant was unfounded. The prohibition of section 829 goes only to testifying against an executor or administrator. An executor or administrator, although sharing in the distribution of the estate, is not prohibited from testifying in favor of himself as executor or administrator to transactions had between his own decedent and the adverse party. McLaughlin v. Webster, 141 N. Y. 76, 35 N. E. 1081; Martin v. Hillen, 142 N. Y. 140, 144, 36 N. E. 803; Jones v. Perkins, 29 App. Div. 37, 51 N. Y. Supp. 380; Klock v. Brennan, 82 Hun, 262, 31 N. Y. Supp. 190. Section 829 expressly allows the executor or administrator to testify to such personal transactions; the only penalty being that the door is opened for the opposite party to testify concerning the same transaction or communication. By the provisions of section 828 all persons irrespective of interest are made competent witnesses, unless expressly prohibited from testifying. Sarah Scully, therefore, would have been a competent witness to testify to any personal transaction had between her decedent, Thomas J., and John Scully, deceased. The transactions, however, which she was called upon to testify concerning were had with John Scully after her husband's death, and it is claimed that she was incompetent to testify concerning them because John Scully was a deceased person through whom the defendant claimed title to the fund. By her answer the defendant claimed no title whatever, but simply attempted to justify her acts in withdrawing the deposit which stood in the name of herself and the plaintiff, Sarah, because she was directed so to do by John. The plaintiff did not claim title through John, nor did the defendant, and therefore he was not a deceased person through whom either party claimed title to the fund in controversy. According to the plaintiff's claim, in the course of her administration as administratrix of her husband's estate, his father, upon whom she relied, advised her to withdraw the money which was deposited in her husband's name, and place it on deposit in the name of herself and this defendant, subject to withdrawal by either, not because he himself owned it and wanted it

so deposited, but for convenience only. After the money was so de-- posited, this defendant withdrew it, and placed it beyond the reach of the plaintiff, and because of such act by the defendant this action in conversion is brought. The defendant justifies on the ground that she obeyed her father in doing what she did. The defendant does not claim that she owns or ever owned the money, or that she obtained title to it through her father or anybody else. Of course, she does incidentally claim that her father had a right to say what should be done with the money because it belonged to him, and not to Thomas. Nevertheless I fail to see how John Scully is a person through whom the defendant claims title in such a sense as to prohibit the plaintiff, who is acting in a fiduciary capacity in the settlement of her husband's estate, from testifying to conversations which she had with John Scully which led her to withdraw the money and deposit it in the name of herself and this defendant. If, however, there was any error in permitting the plaintiff to testify to these conversations, such error was cured in a very large measure, if not entirely, because the defendant without objection was permitted to testify to the same transactions, giving a different version of what occurred from that testified to by the plaintiff. To be sure, the plaintiff was first sworn and the defendant was testifying in denial of what the plaintiff had testified to; but no unfairness resulted because the version of each side was before the jury.

Upon the first ground indicated, however, I concur in a reversal of the judgment and granting a new trial.